# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN (DUBUQUE) DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 18-cr-1043-CJW-MAR |
| vs. | **ORDER** |
| TIMOTHY MCKENZIE, | |
| Defendant. | |

## I. INTRODUCTION

This case is before the Court pursuant to the government's Objections (Doc. 39) to the Report and Recommendation (Doc. 31) of the Honorable Mark A. Roberts, United States Magistrate Judge. On November 7, 2018, defendant filed a Motion to Suppress. (Doc. 22). The government timely filed a resistance. (Doc. 23). On November 29, 2018, Judge Roberts held a hearing on the motion and permitted the parties to file supplemental briefs. (Doc. 28). On December 7, 2019, the government filed a supplemental brief. (Doc. 30). On December 19, 2018, Judge Roberts issued the Report and Recommendation, which recommends that the Court grant the Motion to Suppress. On January 14, 2019, the government filed its Objections. Defendant filed a response to the government's objections, although the response was untimely. (Doc. 42). For the following reasons, the Court **overrules** the government's Objections, and **grants** the Motion to Suppress.

## II. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which

objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CRIM. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[ ] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CRIM. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report and recommendation when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the Court reviews the disputed portions of the Report and Recommendation de novo.

## III. FACTUAL BACKGROUND[1]

On July 22, 2018, the Dubuque Police Department received an anonymous report that a black male, approximately 17 years old, wearing a black shirt, was in possession of a firearm on Jackson Street in Dubuque. Multiple officers responded to the scene to investigate. Officer Kim Hoover arrived at the 2100 block of White Street, approximately one block from where the gun was allegedly seen. Officer Hoover testified that she considered the neighborhood a "high-crime" area and that approximately one year prior the Dubuque Police Department had received a report of shots being fired in an alley off of White Street. Officer Brandon Gudenkauf also arrived on the block and walked toward

---

[1] After reviewing the Hearing Transcript (Doc. 40), the Court finds that Judge Roberts accurately and thoroughly set forth the relevant facts in the Report and Recommendation. The Court will, therefore, only briefly summarize the facts here. When relevant, the Court relies on and discusses additional facts in conjunction with its legal analysis.

2

a group of five or six people gathered outside a residence. Two individuals in the group matched the description of the subject from the anonymous call.

Officer Hoover was walking in the same direction as Officer Gudenkauf, several car lengths behind him when she noticed defendant, who was approaching the same residence as Officer Gudenkauf. At this time, Officer Dylan Doerges was also approaching the residence from the other end of the street. Defendant did not match the description of the subject from the anonymous call, being considerably older (defendant is 50 years old) and dressed entirely in royal blue. Defendant's path of approach took him between two of the cars parked outside the residence and he headed out of Officer Hoover's view. Officer Hoover's body camera footage indicates that, before stepping between the cars, defendant would have been visible to Officers Hoover, Gudenkauf, and Doeges.

As defendant began to step between the cars, Officer Hoover called out to defendant and ordered him to step back. Defendant immediately complied. At the time Officer Hoover called out to defendant, Officer Gudenkauf would have been able to see defendant, although Officer Gudenkauf testified that he did not notice defendant. Officer Hoover approached defendant and announced that she was going to conduct a pat down. As Officer Hoover reached out to defendant, defendant placed his hands above his head and informed Officer Hoover that he had a gun in his pocket. Officer Hoover pulled the firearm from defendant's pocket. Officer Doerges then placed defendant in handcuffs.

## IV. ANALYSIS

In the Motion to Suppress, defendant argues that the Officer Hoover did not have reasonable suspicion or probable cause to detain him nor to conduct a pat down search, that Officer Hoover's question to defendant was a custodial interrogation conducted without defendant having been advised of his Miranda rights, and that the firearm and statements must be suppressed. (Doc. 22, at 2-3). In the Report and Recommendation,

Judge Roberts found that Officer Hoover lacked reasonable, articulable suspicion to detain defendant and lacked reasonable suspicion that defendant was armed and dangerous. (Doc. 31, at 8-16). Judge Roberts also found that defendant's statements should be suppressed as the fruit of an unlawful seizure. (*Id.*, at 17). The government now objects to each of Judge Roberts' legal conclusions. The Court will address each objection in turn.

### A. *Reasonable Suspicion to Detain Defendant*

"A police officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Collins*, 883 F.3d 1029, 1031-32 (8th Cir. 2018) (citations omitted). "Reasonable suspicion exists when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Mosley,* 878 F.3d 246, 251 (8th Cir. 2017) (citations omitted). "Reasonable suspicion to conduct a stop is determined by the totality of the circumstances." *United States v. Hopkins*, 824 F.3d 726, 734 (8th Cir. 2016). "Reasonable suspicion does not exist solely on the basis of an officer's hunch. Instead, the officer must be able to articulate some minimal, objective justification for a *Terry* stop." *United States v. Dunning*, 666 F.3d 1158, 1164 (8th Cir. 2012) (citations and internal quotation marks omitted).

In this case, the government asserts that Judge Roberts incorrectly "focuse[d] on whether or not defendant himself was suspected of criminal activity." (Doc. 39-1, at 7). The government argues that, instead, it "must prove that the officer had reasonable suspicion 'that criminal activity was afoot, not that the subject of the stop was actively engaged in a crime.'" (*Id.* (quoting *United States v. Fields*, 832 F.3d 831, 834 (8th Cir. 2016)). In *Fields*, however, the defendant appeared poised to commit a crime and the officers detained him before he did so rather than while he was doing so. *Fields*, 832 F.

4

3d at 833-34.  This is entirely consistent with the Supreme Court's guidance that "[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, *or is about to be*, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981) (emphasis added).  To suggest, however, that officers may detain any person merely because some nearby person may be engaged in criminal activity flies in the face of the requirement for "suspicion that the particular individual being stopped is engaged in wrongdoing." *Id*. at 418.  The Supreme Court has said that this requirement of specificity "is *the central teaching of this Court's Fourth Amendment jurisprudence*." *Id.* (quoting *Terry v. Ohio*, 391 U.S. 1, 21, n. 18 (1968)).

Thus, the Court looks to the objective evidence Officer Hoover had that defendant himself was engaged in wrongdoing.  The government argues that Officer Hoover had reasonable suspicion because:

> [I]mmediately after the call came in defendant was within a short distance of the location described by the caller, was located in a high-crime area where shootings had occurred at all hours, and his immediate movement upon the arrival of law enforcement took him out of view of Officer Hoover.  Defendant was further in close proximity to individuals matching the clothing description provided by the caller.

(Doc. 39-1, at 10-11).  The government cites several cases that it asserts have similar facts to the present case in which a *Terry* stop was held to be justified.  The government's description of these cases, however, is far too selective; the government omits critical facts from each of these cases that supported a finding of reasonable suspicion.

The government cites *United States v. Roelandt*, 827 F.3d 746 (8th Cir. 2016), asserting that a *Terry* stop was upheld "where defendant's behavior included nervous behavior while walking at a quick pace through a high crime area." (Doc. 31-1, at 5-6).  The government omits that in *Roelandt*, the defendant was a known felon and member of a street gang, another member of the gang and close friend of the defendant had been shot an hour earlier, the officer was aware that retaliatory shootings between gangs

frequently occurred within a short time of a shooting, and the officer had received information from a confidential informant three months earlier that the defendant carried a firearm. 827 F.3d at 747-49. Additionally, the defendant was continually looking around him, and when officers asked him to show his hands they saw his hand expand and narrow as he pulled it from his pocket. *Id.* In the present case, Officer Hoover had no prior information about defendant and defendant did nothing to indicate he had a weapon or was otherwise engaged in criminal activity.

The government cites *Fields*, stating that "the Court upheld the *Terry* stop of a man with a bulge on his hip consistent with a hidden firearm." (Doc. 39-1, at 7). The government omits that in *Fields*, the defendant was one of four men observed behaving suspiciously outside the funeral for the victim of a recent homicide. 832 F.3d, at 834-35. An employee of the funeral home had alerted the police that the family did not know the men and were afraid for their safety. *Id.* Further, in the present case, Officer Hoover did not testify that she saw a bulge that she believed to be a gun prior to detaining defendant.

The government cites *United States v. Woods*, 747 F.3d 552 (8th Cir. 2014), stating that the court upheld a *Terry* stop where:

> In *Woods*, officers received a tip that a black male, wearing a black hat, tan pants, and a white T-shirt had a gun at the bus station. Officers arrived on scene and found a man in a dark hat and after taking him to the ground and frisking him, received a second call from the same person stating that he was watching and they had the wrong suspect. Officers then located two black males sitting next to each other, one in a black hat and the other in a camouflage hat. Officers drew their guns on the two men and commanded them to put their hands in the air. Officers frisked the man with the black hat and located a firearm; they then frisked the man with a camouflage hat, later identified as Woods, and recovered another firearm.

(Doc. 39-1, at 8-9). The government omits the fact that in *Woods*, during the second call, the caller specifically identified both the man in the black hat and the man in the

6

camouflage hat as the people police should search because he had seen the butt of a gun protruding from one of the two men while they were riding the bus. 747 F.3d at 554-55.

The government cites *United States v. Quinn*, 812 F.3d 694 (8th Cir. 2016), asserting that a *Terry* stop was upheld where "the defendant was found a few blocks from the scene of a wrecked car, forty minutes after the suspect was seen fleeing the wreck and officers noticed him looking over his shoulder toward the officer." (Doc. 31-1, at 9-10). The government argues that "the defendant's proximity to the crime scene, a suspect that matched his race and sex, and his suspicious reaction after noticing the officer was sufficient when looked at based on the totality of the circumstances to warrant a stop of defendant." (*Id.*, at 10). The government omits that the wrecked car had been reported stolen, the defendant was seen emerging from an alley late at night when there were few other pedestrians nearby, that he was the only person seen heading away from the scene of the wrecked stolen car and he was attempting to escape the boundaries of a police perimeter, and that he looked over his shoulder at the officer not once but constantly as he walked away. *Quinn*, 812 F.3d at 697-98.

One common element to these cases is that in each the officers observed the defendant behave suspiciously. That element is absent in the present case. Officer Hoover testified that defendant walking between two cars, one of which separated him from Officer Gudenkauf, "made me think something was off" (Doc. 40, at 8), but did not articulate any reason she found this behavior suspicious. The Court has reviewed Officer Hoover's body camera footage and can see nothing suspicious in defendant's behavior. Defendant's gait is normal and casual. He does not crouch behind the cars or otherwise attempt to conceal himself. He does not appear to go out of his way to take a route that would put him out of the officers' view or directly behind Officer Gudenkauf. Rather, he appears to take the most direct route to the front stairs of the residence and

7

just happens to be walking on one side of a car when Officer Gudenkauf is walking on the other. It was daylight and defendant was fully visible to all of the officers, including Officer Gudenkauf,[2] when defendant began to walk between the cars toward the building, in the same direction as Officer Gudenkauf. There was nothing inherently suspicious about defendant's movement and Officer Hoover did not articulate anything suspicious about this defendant's behavior. Rather, Officer Hoover's statement reflects a hunch; defendant's movement made her think "something was off." Exactly what that something was Officer Hoover could not and did not articulate.[3]

Although Officer Hoover may have been concerned when defendant moved between the cars because it meant that there would be someone on scene that she could not see, that action is not suspicious or indicative of criminal activity. Officer Hoover, then, merely observed someone who did not match the description of the subject, in the general area of where the anonymous tip had directed law enforcement, who was relatively near—but not with—individuals who matched the description of the subject, and who was moving toward the officers, not attempting to flee or hide from them. Defendant's mere presence in a high crime area near other potential suspects does not transform defendant's otherwise unsuspicious behavior into a reasonable, articulable basis to believe that defendant himself was engaged in criminal activity. Under these circumstances, the Court cannot say that Officer Hoover had particularized reasonable suspicion to detain defendant. Accordingly, the government's objection is **overruled**.

---

[2] Although Officer Gudenkauf testified that he, in fact, did not notice defendant, the Court must look to the perspective of Officer Hoover in this case, as she made the stop. From Officer Hoover's vantage point, it was clear that defendant was in Officer Gudenkauf's like of sight as the two approached the vehicle.

[3] To be clear, this should not be taken as criticism of Officer Hoover. Officers' hunches may save their lives and officers on the street sometimes must act on hunches. It is also clear, however, that a hunch alone cannot justify a search or seizure (even a temporary one) of a person.

8

### B. *Reasonable Suspicion to Conduct a Pat Down*

Even if Officer Hoover had reasonable suspicion to detain defendant for an investigatory stop, she would not automatically have been justified in conducting a pat down search of defendant. "[T]o proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009). "However, such a search requires more than an officer's 'inchoate and unparticularized suspicion or "hunch."'" *United States v. Cotter*, 701 F.3d 544, 548 (8th Cir. 2012) (quoting *Terry*, 392 U.S. at 27). "Instead, protective frisks are constitutionally reasonable when a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." *United States v. Bailey*, 417 F.3d 873, 876 (8th Cir. 2005) (citations and internal quotation marks omitted).

The government argues that, assuming defendant was already lawfully detained, Officer Hoover was justified in conducting a pat down search of defendant "because he was approaching another officer from the rear" and because she was responding to a report of a firearm in a high-crime area where shootings were common and was "concerned either that the firearm could have been passed to another person or that another person had a firearm as a result of the original firearm or that the individual with the firearm had been misidentified." (Doc. 39-1, at 13-14). Initially, the Court notes that Officer Hoover's body camera footage shows that defendant was not approaching Officer Gudenkauf from the rear, but rather was heading to the same point as Officer Gudenkauf but from an angle about forty-five degrees off. Further, there was no evidence that officers had seen defendant with the other individuals matching the description of the juvenile with a firearm and defendant was still at least a car length's distance from those individuals at the time he was detained. Thus, there was no articulable facts to suggest

9

that defendant had been or was in a position to be passed a firearm by another. Additionally, the government cites no case law, and the Court can find none, that would support a generalized concern about the possibility of a firearm having changed hands justifying the pat down of a particular subject. Indeed, this would seem to be exactly the kind of "inchoate and unparticularized suspicion" that cannot form the basis for a protective frisk.

The government does correctly note that presence in a high crime area can be a contributing factor in the formation of reasonable suspicion. The very cases the government cites, however, demonstrate the kind of particularized facts that must be paired with presence in a high-crime area in order to justify a pat down. In *Bailey*, the defendant was found at the location of a recent armed carjacking, the defendant matched the age and race of the carjacking suspects, there had been a number of similar crimes in the area, the defendant was seen talking on a pay phone that the officer legitimately believed (albeit erroneously) was disconnected, and when officers approached the defendant he turned to conceal a side of his body. 417 F.3d at 874-75. In *United States v. Stigler*, 574 F.3d 1008 (8th Cir. 2009), the officers were responding to a call of a fight, when they arrived the defendant initially fled, and when he was confronted by officer the defendant seemed startled and threw a baggie on the ground. 574 F.3d at 1009-10. In the present case, the defendant himself had not done anything to indicate that he was armed and dangerous. A generalized concern that someone other than the subject of the call may have had a gun and a generalized concern about presence in a high-crime area are insufficient to justify a pat down.

The Court is sympathetic to the safety concerns that officers have in the field when responding to a report of a firearm. The officers are placed in a dangerous situation and must make split-second decisions. Yet that concern, however understandable, cannot justify searching any and all individuals the officers encounter. As Judge Roberts did,

10

the Court finds that this position was well articulated by the court in *Willowby v. City of Philadelphia* when it stated:

> I appreciate and value the officers' concern that these bystanders could have had weapons and [the officers'] desire to remove any possibility that an armed individual in close proximity . . . would use a weapon against police with an element of surprise. However, the state of the law in this country is such that law enforcement officers do not possess the necessary justification for a pat down search of an individual absent a warrant or probable cause for arrest unless they have an articulable suspicion that the individual is engaged in criminal activity and is armed and dangerous.

946 F. Supp. 369, 376 (E.D. Pa. 1996). The Court can understand and appreciate the desire of officers to take a better-safe-than-sorry approach to a dangerous situation. The Court cannot, however, permit the government to use evidence from a search conducted without reasonable suspicion, as was the case here. Accordingly, the government's objection is **overruled**.

### C. *Suppression of Defendant's Statements*

Defendant moved to suppress his statements to Officer Hoover as a violation of his *Miranda* rights. (Doc. 22, at 2-3). Judge Roberts did not address the *Miranda* issue, finding instead that defendant's statements should be suppressed as the fruit of an unlawful seizure. (Doc. 31, at 17). The government objects to Judge Roberts' finding that the statements should be suppressed, arguing, for the reasons previously stated, that defendant was lawfully detained at the time he made the statement. (Doc. 39-1, at 15). The government also argues that officers are permitted to question subjects about the location of firearms without conducting a *Miranda* warning. (*Id.*). The government is correct that, if defendant had been lawfully detained, his statements would not need to be suppressed as a *Miranda* violation. *See New York v. Quarles*, 467 U.S. 649, 655-58 (1984) (permitting a "public safety" exception to *Miranda* where "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the

11

prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination"). Because the Court has already found that defendant was unlawfully detained, however, the Court concurs with Judge Roberts' finding that defendant's statements must be suppressed as fruit of the poisonous tree. Accordingly, the government's objection is **overruled**.

## V. CONCLUSION

For the reasons set forth above, the government's objections (Doc. 39) are **overruled,** the Report and Recommendation (Doc. 31) is **adopted**, and defendant's Motion to Suppress (Doc. 22) is **granted**.

**IT IS SO ORDERED** this 7th day of February, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa